UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **KAREN SHOWALTER et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| vs. ) | Cause No. 1:08-cv-666-WTL-JMS |
| ) | |
| **GARFF RICHMOND, LLC d/b/a TOYOTA** ) | |
| **OF RICHMOND and DAVID MILLER,** ) | |
| ) | |
| **Defendants.** ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE**

Before the Court are six motions for summary judgment and six motions to strike filed by the Defendants. In this Entry, the Court addresses the Motion for Summary Judgment (Docket No. 66) and Motion to Strike (Docket No. 98) pertaining to Plaintiff Thelma Sue Bales. The motions are fully briefed, and the Court, being duly advised, **DENIES** the Motion to Strike but reopens discovery to allow the Defendants to depose Dave Vanover and Becky Slusher, and **GRANTS IN PART AND DENIES IN PART** the Motion for Summary Judgment, for the reasons, and to the extent set forth below.

**I. SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d

582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II.  BACKGROUND

Thelma Sue Bales was hired by Toyota of Richmond ("the Dealership") in 2005 as a cashier. Bales was responsible for "taking the money from the parts, service, petty cash . . . [and] when they sold a car." Def. Ex. 1 at 35, lines 7-10. At some point, Bales also became responsible for submitting and following up on extended warranties. *Id.* at 28, line 3.

When Bales was hired, her supervisor initially was Mathrel Maupin. *Id.* at 33, lines 10-12. When Maupin retired, David Miller became Bales' supervisor. *Id.* at 33, lines 8-10. Almost immediately their relationship became confrontational. Bales alleges that at various times Miller "yelled at her, slammed a book on her desk, used profanity, and flung paper onto her desk in her general direction." Def. Br. at 5. Bales' problems with Miller began when Bales became friends with Miller's wife. Miller was having an affair with another employee and he suspected that Bales told his wife. *Id.* at 18, lines 6-25. Then, $200 went missing from the Dealership's petty cash box, and Miller blamed Bales. When Bales began handling extended warranties, Miller yelled at Bales for erroneously completing an extended warranty, which cost the dealership $3,000. *Id.* at 40-41. At least one employee reported that Miller frequently cursed at Bales, told

her that her poor performance was due to her age, and referred to her as old and stupid. *See* Pl. Ex. 5 ¶ 18.

In 2007, the Dealership was purchased by Garff Richmond ("Garff"). Marion Palmore became the new General Manager and Ray Sanabia became the Director of Operations. In a meeting that Bales did not attend, Palmore and Sanabia stated that they no longer wanted any "old" people working at the Dealership and that they would only accept employment applications from women under twenty-five years of age.[1] *Id.* ¶¶ 5, 7. "Upon hearing this, David Miller exclaimed, 'So I can finally get rid of Grandma Bales?!' In response, Marion Palmore replied, 'Yeah, you can send her off to the nursing home.'" *Id.* ¶ 6. Shortly thereafter, the Dealership hired a young woman named Christine Tidrow and began training her as an office employee. Def. Ex. 1 at 133, lines 4-10; *id.* at 136, lines 13-20. Ultimately, the Dealership fired Bales, allegedly for failing to timely submit warranties. She claims that she was replaced by Tidrow, who was significantly younger than her. The day after Bales' termination, Dave Vanover confronted Miller about his treatment of Bales. Miller told Vanover not to worry about Bales because she would "wind-up in some assisted living community." Pl. Ex. 5 ¶ 19.

Bales filed this suit alleging that the Defendants terminated her based on her age in violation of the Age Discrimination in Employment Act ("ADEA"). She also alleges negligent retention and intentional infliction of emotional distress.

---

[1] The Defendants vigorously dispute the veracity of this statement, however, as this is the Defendants' Motion for Summary Judgment, the Court must believe Bales' admissible evidence and draw all reasonable inferences in her favor. As the Court will explain below, the Defendants' Motion to Strike is denied and the Court has considered all of the parties' designated evidence.

### III.  DISCUSSION

The Defendants moved to strike the affidavits of Dave Vanover, Pl. Ex. 5, and Becky Slusher, Pl. Ex. 6, because the Plaintiff failed to disclose these witnesses.  It is true that neither Vanover nor Slusher was disclosed in the Plaintiff's Preliminary Witness List.  However, Vanover was identified in the Plaintiff's Initial Disclosures as a potential witness, and in her supplemental responses to the Defendants' interrogatories, Bales identified both Vanover and Slusher as potential witnesses to the Defendants' age discrimination.  Finally, during her deposition, Bales identified Vanover as someone she confided in about Miller's mistreatement of her.  She also indicated that she heard about the infamous Palmore-Sanabia meeting through Vanover.  Thus, although the Plaintiff may have committed a technical violation of Rule 26(a) of the Federal Rules of Civil Procedure, striking the Vanover and Slusher affidavits is not an appropriate remedy.  Accordingly, the Defendants' Motion to Strike is **DENIED**; however, discovery is reopened to allow the Defendants to depose Dave Vanover and Becky Slusher.

**A.  The ADEA Claim.**

Although Bales names Miller in his individual capacity as a defendant, and she has plead factual allegations regarding his discriminatory conduct, the Seventh Circuit has held that an individual is not a proper Title VII defendant.  *Williams v. Banning*, 72 F.3d 552, 554 (7th Cir. 1995).  In *Williams*, the court cited with approval *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 n.1 (4th Cir. 1994), which refused to recognize individual liability under the ADEA.  Accordingly, in this circuit, an individual is not a proper ADEA defendant.  Bales cannot bring an ADEA claim against Miller in his individual capacity so Miller's motion for summary judgment is **GRANTED** as to Bales' ADEA claim against him in his individual capacity.

4

However, the Dealership is a proper ADEA defendant.  In order to prevail on her claim against the Dealership, Bales ultimately will have to convince a jury by a preponderance of the evidence that her age was a motivating factor in the Dealership's decision to terminate her.  At this stage of the case, Bales can "avert summary judgment 'either by putting in enough evidence, whether direct or circumstantial, of discriminatory motivation to create a triable issue,'" the so-called direct method, "'or by establishing a prima facie case under the *McDonnell Douglas* formula.'"  *Paz v. Wauconda Healthcare & Rehab. Ctr., LLC*, 464 F.3d 659, 665 (7th Cir. 2006) (quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 719 (7th Cir. 2005)).  The Seventh Circuit has recognized "three distinguishable kinds of 'circumstantial' evidence of intentional discrimination."  *Rudin*, 420 F.3d at 720.

> The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn . . . . Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment. And third is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief.

*Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994) (citations omitted).  A plaintiff can survive summary judgment by "constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'"  *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (quoting *Troupe*, 20 F.3d at 737).  Applying this standard, and viewing the evidence of record in the light most favorable to Bales, the Court determines that the evidence described above, if believed, would permit a jury to

5

reasonably infer that age was a motivating factor in the Dealership's decision to terminate her.[2] Therefore, the Dealership's Motion for Summary Judgment is **DENIED** as to Bales' ADEA claim.

### B. The Negligent Retention Claim.

The Defendants argue that Bales' negligent retention claim is barred by the exclusivity provision of Indiana's Worker's Compensation Act. The exclusivity provision is codified at Indiana Code 22-3-2-6, which states: "The rights and remedies granted to an employee . . . on account of personal injury or death by accident shall exclude all other rights and remedies of such employee . . . on account of such injury or death, except for the remedies available under IC 5-2-6.1." The Indiana Supreme Court has held that this provision bars a court from hearing any common law action brought by an employee if the "employee's injury occurred by accident arising out of and in the course of employment." *Sims v. United States Fid. & Guar. Co.*, 782 N.E.2d 345, 349 (Ind. 2003); *see also Assocs. Corp. of North Am. v. Smithley*, 621 N.E.2d 1116, 1120 (Ind. Ct. App. 1993) (Worker's Compensation Act excludes common law rights and remedies of an employee against her employer for personal injury or death if: (1) the injury or death is by accident; (2) the injury or death arose out of employment; and (3) the injury or death arose in the course of employment").

In *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1288 (Ind. 1994), the Indiana Supreme Court explained that the nature of the employee's injury determines whether the exclusivity provision of the Worker's Compensation Act applies. In *Perry*, the employee's

---

[2] The parties' briefs contain argument regarding both the direct method and the *McDonnell Douglas* burden-shifting analysis. Because the Court finds that Bales has sustained her burden under the former, it is not necessary to address the arguments relating to the latter.

"injuries engendered no work-related disability." *Id*. The employee sought redress only for embarrassment and humiliation, which did not constitute "personal injury or death." *Id.* The court held that the exclusivity provision contemplated only personal injuries – physical injury, disability, and impairment. *Id.* "'Impairment' is a term of art for purposes of workers compensation that denotes an injured employee's loss of physical functions." *Id*. "'Disability' refers to an injured employee's inability to work." *Id.* Thus, a non-physical injury is not a personal injury under the exclusivity provision. *Id*. at 1288-89. Because the plaintiff in *Perry* sought damages for a non-physical injury, the exclusivity provision did not bar his claim.

So too in the instant case. Bales' negligent retention claim is not based on a physical injury, impairment, or disability. She only seeks redress for the emotional harm and distress caused by the Dealership's retention of Miller. Bales' damages are "related to lost wages and benefits, emotional distress, mental anguish, humiliation, embarrassment, inconvenience, and other intangible harm she [has] suffered." Response at 14. Thus, like the plaintiff in *Perry*, the Worker's Compensation Act does not bar Bales' negligent retention claim because her injuries are not physical, and she has suffered neither impairment nor disability. Accordingly, the Defendants' Motion for Summary Judgment is **DENIED** as to Bales' negligent retention claim.

    **C.**    **The Intentional Infliction of Emotional Distress Claim.**

The Dealership argues that Bales' claim for intentional infliction of emotional distress ("IIED") against it fails because "she cannot offer any evidence to establish that Garff Richmond intended to cause her emotional distress." Def. Br. at 19. The Court agrees – Bales has not produced any evidence indicating that the Dealership intended to cause her emotional distress. In addition, Bales has not produced any evidence that the Dealership was Miller's "alter ego" or

7

that the Dealership "substituted its will" for Miller's will.  *Perry*, 637 N.E.2d at 1287.  Thus, Miller's tortious intent (if any) cannot be imputed to the Dealership.  The Dealership's Motion for Summary Judgment is **GRANTED** as to Bales' IIED claim.

In order to hold Miller liable for IIED, Bales must show that Miller, "by extreme and outrageous conduct . . . intentionally or recklessly" caused her "severe emotional distress." *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991).  In *Cullison*, Indiana adopted the definition of IIED set forth in section 46 of the RESTATEMENT (SECOND) OF TORTS.  The comments to this section require highly egregious conduct in order for liability to attach.

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965).

Bales claims that *Bradley v. Hall*, 720 N.E.2d 747 (Ind. Ct. App. 1999), indicates that the jury decides whether conduct is "extreme and outrageous."  This is a very generous reading of *Bradley*.  Contrary to the Plaintiff's assertion, *Bradley* states that "[i]n the appropriate case, the question can be decided as a matter of law."  *Id*. at 753.  Thus, this is not always an issue for the jury.  In addition, although the Plaintiff claims that the facts in *Bradley* are analogous to the facts in her case, the Court disagrees.  In *Bradley*, the employer mocked an employee's menopause and made provocative comments about her husband's sexual abilities.  The court held that discussing these "personal and private topics" in the workplace could have been extreme and outrageous; therefore, summary judgment was not appropriate.  In the instant case Bales does not allege that Miller made any similar comments to her.  Thus, the cases are distinguishable.

This case is more analogous to *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1167 (7th Cir. 1997), in which the Seventh Circuit held that yelling at an employee and refusing to reassign the employee to a different position was simply not extreme and outrageous conduct. As the comments to the Restatement note, "liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965). The conduct that Bales has identified – yelling, cursing, slamming a book on her desk, and flinging paper in her direction – is simply not extreme and outrageous under Indiana law. Accordingly, Miller's Motion for Summary Judgment is **GRANTED** as to Bales' IIED claim.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Strike (Docket No. 98) is **DENIED** but discovery is reopened to allow the Defendants to depose Dave Vanover and Becky Slusher. In addition, the Defendants' Motion for Summary Judgment (Docket No. 66) is **GRANTED IN PART AND DENIED IN PART**.

SO ORDERED: 02/26/2010

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Stephanie Lynn Cassman
Lewis Wagner LLP
scassman@lewiswagner.com

Richard D. Hailey
Ramey & Hailey
rich@rameyandhaileylaw.com

Thomas C. Hays
Lewis Wagner LLP
thays@lewiswagner.com

Theresa Renee Parish
Lewis Wagner LLP
tparish@lewiswagner.com

Joel Samuel Paul
Ramey & Hailey
lawjoel@hotmail.com